IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| YAMAN TAYLOR, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:17-CV-5184-AT |
| | : | |
| STERLING, INC. and WORLD | : | |
| FINANCE CORPORATION OF | : | |
| GEORGIA, | : | |
| | : | |
| Defendants. | : | |

## ORDER

This dispute arises out of telephone calls allegedly made by Defendants Modern Finance and Investment d/b/a Sterling Finance Company, named as Sterling, Inc. ("Sterling"), and World Finance Corporation of Georgia ("World Finance") to Plaintiff Yaman Taylor ("Taylor"). (First Amended Complaint, Doc. 6 ¶ 1.) Taylor is a consumer who purchased a vehicle using a financing agreement with Sterling. (Loan Documents, Doc. 12-2 at 7-12.) World Finance then purchased Sterling after Sterling entered into the financing agreement. (Asset Purchase Agreement, Doc. 12-2 at 14.) After allegedly receiving multiple calls from Sterling and World Finance, Taylor filed a complaint in this Court. Taylor is a *pro se* plaintiff. He claims that these calls violated Section 227 of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, as well as O.C.G.A. § 46-5-27(i), which also regulates telephone solicitations to consumers.

Both World Finance and Sterling filed motions to compel arbitration pursuant to an alternative dispute resolution ("ADR") agreement signed by Taylor. World Finance asks the Court to dismiss this case or, alternatively, to stay this action and compel arbitration. (Doc. 12.) Sterling moves to dismiss the case and compel arbitration. (Doc. 16.)

## I.    BACKGROUND[1]

In the First Amended Complaint, Taylor alleges that Defendants called him multiple times, using both human and automated telephone technology in violation of the TCPA. (First Amended Complaint, Doc. 6 ¶¶ 16-17.) He alleges that, after telling a representative on the phone to stop calling him, he received at least seventy-five more calls from Defendants to his cellular phone. (*Id.* ¶ 20.) Taylor does not mention the financing agreement with Sterling in his Complaint or include it as an attachment.

World Finance first introduced the financing agreement with Taylor in its Motion to Compel. According to Defendant World Finance, Plaintiff "obtained a loan from Modern Finance and Investment Co. d/b/a Sterling Finance Company." (Affidavit of Devera Smylie, Doc., 12-2 at 2.) World Finance attached this financing agreement along with other documents to its Motion. The other

---

[1] The Court takes the allegations in the Complaint and construes them in the light most favorable to the Taylor. However, the Court also considers matters outside the Complaint for this section. "[A] court can consider information outside the pleadings for purposes of resolving [a] motion [to compel arbitration]." *See Bazemore v. Jefferson Capital Sys., LLC*, No. CV 314-115, 2015 WL 2220057, at *3 (S.D. Ga. May 11, 2015), *aff'd on other grounds*, 827 F.3d 1325 (11th Cir. 2016); *see also In re Checking Account Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (recognizing the "summary-judgment-like nature of an order compelling arbitration, which is in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate.") (internal quotations omitted).

attached documents include (1) an ADR agreement; (2) affidavits from two individuals relating to the purchase of Taylor's account by World Finance; (3) other documents reflecting World Finance's purchase of Sterling and the rights to the financing agreement at issue.  (*See generally*, Doc. 12-2, Doc. 12-3.)  Taylor does not dispute these documents.

The financing agreement provided by World Finance references the separate ADR agreement.  (*See* Financing Agreement, Doc. 12-2 at 9.)  Both the financing agreement and the ADR agreement are signed by Taylor.  (Financing Agreement, Doc. 12-2 at 9; ADR Agreement, Doc. 12-2 at 11.)    The ADR agreement provides in relevant part:

> This Alternative Dispute Resolution Agreement is entered into as part of the Loan Agreement.
>
> 1. Agreement to Arbitrate.  You and we agree that any and all disputes, claims, or controversies of any kind and nature between us arising out of or relating to the relationship between us will be resolved through mandatory, binding arbitration.  This agreement to arbitrate covers . . . disputes about whether any claims, controversies, or disputes between us are subject to arbitration.

(*See* ADR Agreement, Doc. 12-2 at 10.)[2]

The documents attached to World Finance's Motion show that Sterling was previously owned by Mathes Management Enterprises, Inc.  (Affidavit of Audra Webb ("Webb Aff."), Doc. 12-3 ¶ 3; *see also generally* Asset Purchase Agreement, Doc. 12-2 at 14-41; Bill of Sale, Assignment of Accounts, Assignment of Insurance

---

[2] According to the Alternative Dispute Resolution Agreement, the word "we" refers to the "[l]ender . . . and assignees . . ." among potential others. (Doc. 12-2 at 10.)  In addition, "you" refers to Taylor.  (*Id.*)

and Power of Attorney, Doc. 12-2 at 43-45.)   On February 28, 2017, Mathes Management Enterprises, Inc. "sold, assigned and transferred all the rights, title, and interest to, among other things, certain assets to World Finance."  (*Id.*)  This purchase included Plaintiff's financing agreement.  (*See* Webb Aff. ¶ 6.)

Plaintiff commenced this action on December 15, 2017, asserting violations of the TCPA and a similar Georgia statute.  (*See* Compl., Doc. 1.)  Plaintiff then amended his complaint.   (First Amended Compl., Doc. 6.)   Thereafter, both Defendants moved for an order compelling arbitration pursuant to the alternative dispute resolution agreement.  (Docs. 12, 16.)

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* (2012), "reflects the fundamental principle that arbitration is a matter of contract."  *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010).  Pursuant to section 2 of the FAA,

> [a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  "The FAA thereby places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms."  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67–68 (2010).

Ordinarily, "gateway" issues of "arbitrability" – such as whether or not the parties have agreed to arbitrate or whether their agreement covers a particular

controversy – are "for a court to decide." *Howsam v. Dean Witter Reynolds*, Inc., 537 U.S. 79, 84 (2002).  However, such issues may be arbitrated where there is clear and unambiguous evidence that the parties agreed to have an arbitrator decide them.  *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1246 (11th Cir. 2014) (quoting *Rent–A–Ctr., W., Inc.,* 561 U.S. at 68-69); *see also Fatt Katt Enterprises, Inc. v. Rocksolid Granit (USA), Inc.*, No. 1:17-CV-1900-MHC, 2018 WL 482461, at *3 (N.D. Ga. Jan. 11, 2018).  "[A]n agreement to arbitrate these gateway issues 'is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.'"  *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) (quoting *Rent-A-Ctr., W., Inc*, 561 U.S. at 70).

"An antecedent agreement of this kind is typically referred to as a 'delegation provision.'"  *Jones*, 866 F.3d at 1264.  "When 'an arbitration agreement contains a delegation provision—committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable— the courts only retain jurisdiction to review a challenge to that specific provision.'"  *Id.* (quoting *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1144 (11th Cir. 2015)).

## III.   DISCUSSION

World Finance argues that the underlying arbitration agreement is valid, enforceable, and that it covers the claims asserted by Plaintiff.  (World Finance

Motion, Doc. 12-1 at 7-15.)  Additionally, World Finance argues that even if there is a question as to whether the claims asserted by Plaintiff are subject to arbitration, the Parties agreed to submit threshold "arbitrability" questions to the arbitrator, not the Court.  (*Id.* at 15.)  Sterling argues the same.  (*See*, Sterling Motion, Doc. 16-1 at 4-8.)

In response, Taylor argues that his claims are not covered by the agreement to arbitrate.  (Response to World Finance, Doc. 17 at 3, 5, 8, 11; Response to Sterling, Doc. 19 at 3-4, 6-8.)  He also argues that neither World Finance nor Sterling is a proper party.  Specifically, Taylor argues that World Finance is not a party to the financing agreement or the ADR agreement and therefore cannot enforce either.   (Response to World Finance, Doc. 17 at 3, 11-13.)   Taylor also claims that Sterling is not a proper party to this action. (Response to Sterling, Doc. 19 at 5-6.)  Finally, Taylor argues that it is for the Court, not the arbitrator, to decide threshold issues of arbitrability.  (Response to World Finance, Doc. 17 at 6-8.)

The Court first turns to the Parties' arguments about whether the ADR Agreement covers Taylor's claims.

> Arbitration agreements are necessarily enforceable under the FAA if the following prerequisites are met: (1) there is a written agreement to arbitrate; (2) the underlying transaction involves interstate commerce; and (3) the substantive claims are covered by the scope of the arbitration agreement.

*Primm v. Am. Credit Acceptance*, No. 1:17-CV-842-RWS, 2017 U.S. Dist. LEXIS 92332, at *2 (N.D. Ga. June 12, 2017) (Story, J.) (citing 9 U.S.C. § 2.)  Here, there

is no dispute as to the first two prerequisites.  Taylor does not dispute the existence of the financing agreement or agreement to arbitrate, nor does he challenge their connection to interstate commerce.  Rather, the dispute centers on the scope of the arbitration agreement and whether Taylor's claims are covered by it.

As stated earlier, where there is clear and uncontroverted evidence that the parties agreed to delegate to the arbitrator such gateway issues as whether or not the arbitration agreement covers that dispute, these issues should be arbitrated. *Martinez*, *supra*, 744 F.3d at 1246 (citations omitted).  The ADR agreement here contains just such a delegation provision:

> This Alternative Dispute Resolution Agreement is entered into as part of the Loan Agreement.
>
> 1. Agreement to Arbitrate.  You and we agree that any and all disputes, claims, or controversies of any kind and nature between us arising out of or relating to the relationship between us will be resolved through mandatory, binding arbitration.  **This agreement to arbitrate covers . . . disputes about whether any claims, controversies, or disputes between us are subject to arbitration.**

(ADR Agreement, Doc. 12-2 at 10) (emphasis added).

Taylor does not dispute the existence of this delegation provision.  Nor does he specifically challenge it.  *See Jones*, 866 F. 3d at 1264 (quoting *Parnell*, 804 F.3d at 1144) (stating that a court "may examine a challenge to a delegation provision only if the claimant challenged the delegation provision directly") (internal quotations and alterations omitted.)  Defendants have thus provided uncontroverted evidence that the parties agreed to submit "gateway" issues such

as coverage to the arbitrator.  Therefore, the Parties' arguments about whether or not Taylor's claims are within the scope of the agreement to arbitrate have been delegated to the arbitrator for determination and the Court cannot reach them at this juncture.

Taylor's remaining arguments against arbitration are also gateway issues that have been delegated to the arbitrator.  In particular, Taylor argues that World Finance is not a party to the arbitration agreement and therefore cannot enforce it.  (Response to World Finance, Doc. 17 at 3.)  Turning to the language of the delegation clause, the Alternative Dispute Resolution Agreement "covers . . . disputes about whether any claims . . . between us are subject to arbitration." (ADR Agreement, Doc. 12-2 at 10; *see also* note 2, *supra.*)  "[U]s" as used in that provision refers to Taylor and the lender or its assignee.  (*See* note 2, *supra.*) World Finance has provided uncontroverted evidence that it is an assignee to Sterling's agreement with Taylor.  (*See e.g.*, Webb Aff., Doc. 12-3 at 2.)  The Court is therefore satisfied that World Finance is entitled to stand in the shoes of the original signing party and seek to enforce the ADR Agreement – including its delegation clause.  However, the ultimate resolution of whether or not World Finance may enforce this agreement as an assignee is for the arbitrator to decide. The "'clear and unmistakable' language of the contract indicates that the parties intended for just such a dispute to be decided by arbitration and not the court." *Martinez*, 744 F.3d at 1246 (quoting *Rent-A-Ctr., supra*, 561 U.S. at 68-69).

Finally, Taylor argues that "Sterling, Inc." made the disputed calls; not Modern Finance and Investment or Sterling Finance Company. (Response to Sterling, Doc. 19 at 5-6.) It appears from the documents attached to World Finance's Motion that Modern Finance and Investment, Inc. d/b/a Sterling Finance is the proper party. (*See* Financing Agreement, Doc. 12-2 at 8.) However, as with Taylor's arguments about whether World Finance can enforce the agreement, it is for the arbitrator to determine whether Modern Finance and Investment d/b/a Sterling Finance is a proper party and can enforce the arbitration agreement as to Taylor's claims. In short, this is another "gateway" issue that the Parties delegated to the arbitrator.

Accordingly, the Court concludes that the Parties delegated threshold issues of arbitrability to the arbitrator per the ADR agreement. These issues are therefore properly before the arbitrator. If the arbitrator finds that there was no agreement to arbitrate or that the agreement does not cover the dispute, for instance, this case shall come back to the Court.

## IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motions to Compel Arbitration [Docs. 12, 16]. Rather than dismiss the case, however, the Court **HEREBY STAYS** this action during the pendency of the arbitration. The Clerk is **DIRECTED** to **ADMINISTRATIVELY CLOSE**[3] the case.

---

[3] Administrative closure of a case does not prejudice the rights of the parties to litigation in any manner.

**IT IS SO ORDERED** this 19th day of June, 2018.

AMY TOTENBERG
UNITED STATES DISTRICT JUDGE